THE CHICAGO LIFE INSURANCE COMPANY, Appellee v. THE BOARD OF REVIEW OF THE CITY OF DES MOINES, IOWA, Appellant.

**Taxation of insurance companies:** SURPLUS: DEDUCTION FOR DEBTS. The surplus or unassigned funds of an insurance company collected and held merely to guard against unexpected losses and to meet policy liabilities or other contracts, and which are not collected pursuant to law, the policy or the articles of incorporation, are not a liability which the company may deduct from its taxable credits.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN, Judge.

TUESDAY, JULY 10, 1906.

THE plaintiff was assessed for taxation in the city of Des Moines, Iowa, for the year 1903 upon moneys and credits in the sum of $12,482. The board of review having refused to vacate or reduce the assessment, plaintiff appealed to the district court, where a decree was entered sustaining the plaintiff's objections and canceling the assessment. The defendant appeals.— *Reversed.*

*W. H. Bremner, M. H. Cohen,* and *R. B. Alberson,* for appellant.

*George R. Sanderson* and *A. H. Evans,* for appellee.

WEAVER, J.— The possession of the moneys and credits assessed to the appellee is admitted, but it is contended that such funds are not subject to assessment and taxation. These funds constitute what the appellee calls its "surplus" or "unassigned funds," and, briefly stated, have been accumulated in the following manner: The general scheme

of life insurance, by which the policy holder pays an unvarying or level premium during life or a fixed period of years, involves the necessity of fixing an average rate which shall more than pay the cost of the risk during the earlier years of the life of the insured, in order to create or accumulate a fund with which to meet the increased cost which naturally and inevitably comes with old age.   The experience of life insurance companies enables them to calculate with practical certainty the averages of human life, the cost of carrying the risks assumed, and to fix rates of premium which will enable them to meet current losses, defray current expenses, and at the same time set aside a fund which, with accumulated interest, shall be sufficient to make certain their ability to carry the increased risks which attend the increasing age of their policy holders.   The income set apart for this purpose constitutes a reserve fund.   In actual practice life insurance companies ordinarily fix rates of premium somewhat above the theoretical level which, on the basis of past experience, would enable them to pay all expenses and current losses, and lay aside the proper proportion of reserve.   This excess constitutes a " surplus," the nature and use of which seem to vary somewhat with the plan or scheme of insurance.   According to the showing in the record before us the appellee at the date in question had assets to the aggregate value of $131,363.99.   After deducting from this sum its legal reserve, unpaid death losses, and other outstanding claims and charges, there was left in its hands a balance which it designates as " unassigned funds (surplus) " in the sum of $26,712.98.   It is this sum, less an item of real estate, $14,230, which the assessor listed for taxation.

It is the theory of the appellee that this fund is to be treated as an indebtedness of the company within the meaning of Code Supp. 1902, section 1333c.   To properly understand the section referred to requires some examination of the statute of which it forms a part.   Section 1333b. re-

quires every insurance corporation organized under the laws of this state to furnish each year to the assessor of the taxing district in which its principal place of business is located a duplicate of its last annual report to the Auditor of State, together with a detailed statement of all its property and assets of every kind including surplus, guaranty, and reserve funds, and the amount of each. It is also expressly made the duty of the assessor to list and assess against every such corporation "the value of all personal property owned by such corporation together with the actual value of each parcel of real estate situated in the assessment district of such assessor, and all said property shall be assessed at the same rate and for the same purposes as the property of private individuals as provided in section thirteen hundred and five of this Code." This is followed by the provision upon which appellee relies, which is as follows:

Section 1333c. In assessing for taxation the moneys and credits of every insurance corporation, . . . the assessor shall ascertain the debts and liabilities, if any, of such corporation to its shareholders or other persons, which debts and liabilities shall be deducted as provided in section 1311 of the Code, but in ascertaining the indebtedness or liability of such corporation a debt shall be deemed to exist on account of its liability on the policies, certificates or other contracts of insurance issued by it equal to the amount of the surplus or other funds accumulated by such corporation pursuant to law, its contracts of insurance, or articles of incorporation, for the purpose of fulfilling its policies, certificates or other contracts of insurance and which can be used for no other purpose.

The language of the two sections, when read together, as they should be, clearly indicates the purpose of the Legislature to make the moneys and credits of insurance companies taxable, subject only to certain defined exceptions. These exceptions are limited to funds which have been accumulated "pursuant to law, its contracts of insurance, or articles of incorporations for the purpose of fulfilling its

policies, certificates, or other contracts of insurance and which can be used for no other purpose." These exempt funds must have two distinct characteristics: (1) In their origin they must have been accumulated under some provision of the statute or of the policy or of the articles of incorporation; and (2) in their purpose they must have been so accumulated for the purpose of fulfilling the policies or other insurance contracts issued by the corporation, and be dedicated to that use and none other. All other funds are clearly made liable to assessment and taxation. Do the " unassigned " or " surplus " funds of the appellee answer these tests of exemption? In our judgment, they do not. There is no statute requiring the accumulation or creation of a surplus. Neither is there any such obligation imposed by any provision of the appellee's articles of incorporation or insurance contracts so far as the record discloses. Indeed, the very expression " unassigned " or " surplus " funds carries the implication that, after satisfying all legal and contract requirements for the security of the policy holders, there remains an excess or profit. A like result is reached when we apply the second statutory test. Are these funds so dedicated to the purpose of fulfilling the appellee's policies of insurance as to be beyond its legal power to direct them to any other use? If so, there is nothing whatever in the record to indicate it. So far as it appears it was entirely competent for the appellee to assign this surplus or such part as might be needed to cover a shortage, if any should occur, in its expense account, and certainly the payment of salaries, advertising bills, agency expenses, and the like is not a payment or " fulfillment " of any contract of insurance. Even though it may be within the power and intention of the company to distribute these funds in dividends to the policy holders, or hold them as security against some remote, possible future plague or disaster which may increase the death rate to abnormal proportions, it still remains true that there is neither statutory, nor contract, nor charter

obligation resting upon it so to do, nor is there any such provision which requires that these funds be used for "no other purpose" than the fulfillment of the company's contracts of insurance. Nor do these moneys and credits, in any just or proper sense of the word, represent an indebtedness of the company any more than the unexpended cash in the company's expense fund is an indebtness. True, the corporation owes to its members or stockholders (if any) the duty of good faith in the management of its affairs and in using and accounting for its money and property, but that is more akin to the obligation of a trustee than of a debtor.

In argument in this court counsel for appellee admits that under its plan of business no policy holder has any enforceable right or interest in the surplus. Though he goes on to the end of a long life contributing to swell its proportions it adds not a dollar to the amount of the indemnity paid by the company to his wife and children. The insurance which his beneficiaries receive has been fully paid for by his contributions to the current losses, expenses, and reserve, but for his overpayments — payments in excess of the cost of his insurance (and that is all which is meant by "surplus") neither he nor his beneficiaries acquire any right to demand an accounting or a return. Dividends, if any are paid therefrom, are a matter of grace, not of right. To treat the policy holder as the creditor of a fund in which neither he nor any of his beneficiaries can ever partake or share except as such benefit may be voluntarily extended by the company would be a strange perversion of terms. There may be plans of insurance in which the redistribution of the surplus, in whole or in part, is in some manner made obligatory and legally enforceable; but no such claim is made for the plan involved in this controversy. To the extent of the present value of his policy, the holder is always the creditor of the company. That is a tangible something which he can call his own, and the courts are open to his

demand for its protection while the state exacts the deposit of security for its payment. The surplus in itself adds nothing to the value of the policy. The insured can claim no part of it as his own, he cannot compel the declaration of a dividend. The state assumes no responsibility for it. In short it is an asset of the company, not of the policy holder, and the possibility that some time, somewhere, in the more or less distant future, some calamity may happen which will upset all the calculations of learned actuaries, and cause a phenomenal increase of death losses, thus finally justifying the wisdom of creating a surplus is not sufficient in our judgment to give to this fund the qualities of a debt of such character as will authorize the assessor to deduct it from the company's moneys and credits when listing them for taxation. It follows from what we have said the appeal of the company from the action of the board of review should not have been sustained.

The decree of the district court is reversed, and cause remanded for further proceedings in harmony with this opinion. *Reversed.*