### APPEAL OF MILL OWNERS MUTUAL FIRE INSURANCE COMPANY.

**TAXATION:** Nontaxable Surplus Insurance Fund. The funds of a nonstock and nondividend paying mutual fire insurance company are not locally assessable when such funds are accumulated by collecting excess premiums in advance, and, at the termination of the policy, and in accordance therewith, returning to the policyholder the excess over and above the cost of insurance.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

MARCH 15, 1920.

IN the district court, this was an appeal from an order of the city council of Des Moines as a board of review, whereby such board confirmed an assessment against the appellant of $461,381. The district court confirmed the action of the board of review. From such order of the district court, the taxpayer has appealed.—*Reversed.*

*Henry & Henry,* for appellant.

*H. W. Byers, Reson S. Jones, C. A. Weaver,* and *Paul Hewitt,* for appellee.

EVANS, J.—The Mill Owners Mutual Fire Insurance Company, appellant herein, is a mutual fire insurance company, which insures the mill and elevator property of its own members only. It has no capital stock, and pays no dividends as earnings. It does, however, return to its pol-

icyholders a pro rata part of advanced premiums collected
from them.    The amount of premium so returned is usually
denominated upon its books, for want of a better term,
a dividend.    Theoretically, it pays all its losses by a prompt
assessment pro rata upon all its members.    As a practical
fact, however, such method would result in great delay in
the settlement of losses.    In order to avoid such delay, and
to enable it to make prompt adjustment of losses, it collects
in advance from each person becoming a policyholder an
estimated premium, based upon the prospective cost of in-
surance contracted for.    It assumes to hold this premium
in trust, and to pay therefrom the amount of the member's
assessment, in advance of its actual collection.    The amount
of the assessment, when actually collected, goes into the
same premium fund, to fill up the depletion caused by the
advance payment.    That is to say, the assessments for losses
are made regularly, regardless of the premium fund, and
the premium fund is maintained by its constant replenish-
ment from the collection of the successive assessments, and
of premiums from new members.    Under the plan in vogue,
it is intended to maintain the premium fund without sub-
stantial impairment, as long as the company is a going con-
cern.    Its immediate benefit to the policyholders is the ac-
cruing interest thereon, and the grace of the time which it
permits in the collection of assessments.    It also operates
as an equalizer of the assessments, in that it enables uni-
form rates of assessments to be maintained, even though
excessive losses may be temporarily sustained.    The com-
pany is carrying $30,000,000 of insurance for its members.
This premium fund represents a sort of working balance and
quick assets for the payment of losses.    It also represents a
reserve, for the payment of extraordinary losses.    For such
losses, it is subject to call to its last dollar.    On its face, the
sum total looks large, as a part of the working machinery
to be constantly maintained.    Reduced, however, to lower

terms, it means that, for every $30,000 of insurance carried, a working fund of $461 is maintained.

One form of policy used by the company provides for a term insurance of one year. The estimated cost is paid in advance, as a premium. At the expiration of the term, the actual cost of the insurance is charged against the premium account of the policyholder, and the balance of his premium is returned to him. This return to the policyholder is called a "dividend." The larger part of the insurance carried by the company is on this form of policy. In the event of liquidation of the company, all of this premium fund would be distributed to the policyholders, pursuant to their policies. The president of the company testified as follows:

"The interest upon the two funds, the 'permanent fund' of $100,000 and the 'cash surplus over and above the permanent fund' of $361,381.05, all tends to cut down the assessments which will be made upon all members of the company to meet losses and expenses; and, if the policies were wound up today, and the company went out of business, the policyholders would get all of that money."

The foregoing is, perhaps, a sufficient statement of facts to enable a consideration of the legal question presented to us. This question is whether, under the provisions of Section 1333-c, Code Supplement, 1913, this fund is exempt from local assessment. Prior to its amendment by Chapter 258, Acts of the Thirty-seventh General Assembly, this section of the Code was as follows:

"Sec. 1333-c. In assessing for taxation the moneys and credits of every insurance corporation, company or association organized under the laws of this state, except county mutual and fraternal beneficiary associations, which county mutuals and fraternal beneficiary associations are not organized for pecuniary profit, the assessor shall ascertain the debts or liabilities, if any, of such corporation, company

or association to its shareholders or other persons, which debts and liabilities shall be deducted, as provided in Section 1311 of the Code, but in ascertaining the indebtedness or liability of such corporation, company or association, a debt shall be deemed to exist on account of its liability on the policies, certificates or other contracts of insurance issued by it equal to the amount of the surplus or other funds accumulated by any such corporation or association, [pursuant to law, its contracts of insurance or its articles of incorporation] for the purpose of fulfilling its policies, certificates or other contracts of insurance, and which can be used for no other purpose."

Chapter 258, Acts of the Thirty-seventh General Assembly, amended the foregoing by eliminating therefrom that portion thereof which we have included in brackets. We had occasion to construe this section before it was amended in *Chicago Life Ins. Co. v. Board of Review,* 131 Iowa 254. In that case, we held that a certain fund accumulated as a surplus would not come within the exemption provided by this statute. The amendment by the thirty-seventh general assembly was undoubtedly an attempt to enlarge the scope of exemption, and to meet the criticism or differentiation made in the cited case. It is argued for the appellee that the amendment was not effective for that purpose, because not enough of the language of the section was eliminated to accomplish such purpose. Unless the amendment is effective for such purpose, then it must be said to be wholly without meaning. We should be slow to put such a construction upon it. Clearly, this is a fund which the association has accumulated "for the purpose of fulfilling its policies, certificates, or other contracts of insurance." Is it a fund "which can be used for no other purpose?" To dissipate this fund except for the purpose of its accumulation would be a breach of the contracts of insurance.

It does appear that the fund can be drawn on for current expense, but this also is pursuant to the contract of insurance. The contracts of insurance contemplate the current expense as a part of the cost of insurance. But the fund is already diminished by the full amount of current expense already paid. The present fund is not charged with liability for future expense. If we should deem the association to be liquidated today, the sole liability chargeable upon this fund would be that to the policyholder.

True, while the association continues as a going concern, the component parts of the fund are continually changing. New premiums and assessments are collected; current expenses are paid from these as they accrue; and the residue finds its ultimate place in this fund.

It is the clear policy of the statute to exempt from local assessment the funds of an insurance association which are held for the benefit of policyholders in fulfillment of their contracts of insurance, and which are not an accumulation of earnings or profits accruing for the benefit of mere owners or stockholders of the company.

The fact that this association has no capital stock, and, therefore, has no stockholders or owners, and no beneficiaries except its policyholders, furnishes a persuasive reason why it should be deemed to come fairly within the terms of the exemption provided in this statute.

We reach the conclusion that the statute is applicable. The conclusion thus reached renders it unnecessary that we consider the question of exemption of that part of this fund invested in government bonds.

For the reason indicated, the judgment of the district court must be and is—*Reversed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.