CENTRAL LIFE ASSURANCE SOCIETY (MUTUAL), Appellee, v. CITY OF DES MOINES et al., Appellants.

No. 40133.

MAY 5, 1931.

REHEARING DENIED OCTOBER 5, 1931.

Fred P. Carr and Carr, Cox, Evans & Riley, for appellee.

George P. Comfort, C. R. S. Anderson, Charles Hutchinson, and C. A. Weaver, for appellants.

KINDIG, J.—Before the existence of the plaintiff-appellee, the Central Life Assurance Society of the United States (Mutual), a stock company, was organized for the purpose of writing non-participating life insurance on the level premium plan. This stock company was called the Central Life Assurance Society of the United States.

On May 10, 1919, the appellee, Central Life Assurance Society (Mutual), was organized under Chapter Six, Title Nine, of the 1897 Code, as amended. The purpose of the appellee mutual insurance company was to do a legal reserve life insurance business on the mutual plan. Participating insurance is written by this company, while non-participating insurance was carried by the stock company, as before suggested. Immediately after the mutual company was organized, that is to say, on May 15, 1919, the appellee reinsured the non-participating insurance in force with, and which had been written by, the Central Life Assur-

ance Society of the United States, a stock company. As part of the reinsurance contract, the assets and properties of the former stock company were transferred to the appellee company. Appellee, in addition to assuming the obligation of reinsurance, also agreed to pay certain named persons, who were stockholders of the stock company, specified earning from the non-participating business for a period of twenty-two years.

First there was to be reserved from such earnings on the non-participating business $100,000 at the close of each year of the twenty-two, and the balance of the earnings on that non-participating business was to be prorated to the aforesaid stockholders in the ratio of their holdings. Following its organization, as above explained, appellee had written, December 31, 1927, participating insurance to the amount of $144,659,063, while at that time it carried non-participating insurance of the former stock company under the reinsurance agreement to the extent of $30,504,108. According to the level premium plan, premiums were paid on this insurance, and in the year 1927 appellee collected in premiums the total sum of $5,739,853.75. That includes both the participating and non-participating policies. From the participating policies, appellee, during that year, received $4,896,346.46, and from the non-participating policies, $843,507.29.

Reports were duly made to the insurance department for the year 1927, and a duplicate was furnished the assessor, as required by section 7027 of the 1927 Code. Said reports show gross assets, "including ledger and non-ledger," of $26,722,-764.10. After deducting from said gross sum "not admitted assets" of $457,773.38, there remains a total "admitted assets" of $26,264,990.72. To be subtracted from the foregoing admitted assets are liabilities in the amount of $24,585,965.30, thereby leaving a balance of $1,679,025.42, known as a surplus. Such surplus, however, is claimed by appellee as a liability. By so considering the surplus to be a liability, the admitted assets and the liabilities balance.

With the foregoing report and statement before him, the assessor in Des Moines assessed no property of the appellee mutual company except furniture valued at $17,000. An increase of the assessment, however, was made by the Board of Review. It added, to the assessable property of the appellee company,

moneys and credits said to be worth $1,120,627. In arriving at that assessment on the moneys and credits, the Board of Review calculated as follows: It allowed the total value on the gross assets made by appellee, to wit, $26,722,764.10, and then deducted therefrom, as did appellee in its statement, $457,773.38 not admitted assets, and arrived at the net total of admitted assets fixed in appellee's report, of $26,264,990.72. Consequently, appellee and the board of review agreed concerning the assets.

A disagreement, however, arose over the liabilities in two particulars, for the board refused to allow item thirty on the report, which aggregates $230,158.61, set aside for the purpose of paying taxes. And likewise, the board refused to allow as a liability the surplus item of $1,679,025.42. So the agreed admitted assets exceed the liabilities allowed by the board to the extent of $1,909,184.03. But the Board deducted from the last-named amount $788,556, covering the value of the real estate and tax exempt bonds, which, subtracted from $1,909,184.03, leaves a balance of $1,120,627. That is the amount of the assessment fixed by the Board on the moneys and credits.

As before stated, the appellee appealed from this action of the board to the district court, and that tribunal set aside the board's assessment on moneys and credits. Therefore, the defendants and appellants, City of Des Moines and City Council, sitting as a board of review, appealed from the action of the district court to this court. Although only two items passed upon by the board of review were objected to by the appellee, nevertheless appellants complain about four items relating to appellee's moneys and credits. Their complaint is that appellee should be assessed on moneys and credits in the sum of $2,272,-726.92. Appellants arrive at that conclusion by adding to the admitted assets contained in the aforesaid report $457,773.38, which is the amount of the previously named non-admitted assets. Then appellants propose to subtract from the liabilities claimed by appellee, three items as follows: First, $704,326.52, dividends paid to the participating policy holders for the year 1928; second, $230,158.61, the amount estimated for federal, state, and other taxes during the business year of 1928; and, third, $1,679,025.42, before-named, as the unassigned surplus. By way of answer to appellants' claim, appellee in brief asserts: First, that the controversy concerning the non-admitted assets

of $457,773.38, and the dividends to participating policy holders of $704,326.52, is not involved in this appeal for the reason that appellee made no complaint thereof before the board of review; and, second, an appeal was taken by appellee from the action of the board, and consequently the two items mentioned could not be and were not affected on the appeal because they were not in dispute before the local board. Furthermore, appellee maintains that the items relating to the state, federal, and other taxes, and the surplus were properly disposed of by the district court, for the reason that they are debts and liabilities properly deductible from moneys and credits under Sections 7029 and 7030 of the 1927 Code.

These propositions will now be considered in the order named.

I. Is it proper on this appeal to consider the controverted item of assets known as non-admitted assets, and the disputed item of dividends to participating policy holders, even though neither of those propositions was complained of by appellee before the local Board of Review? Not having been complained of by appellee before that board, those items were not in controversy. Both items were allowed by the local board of review and when appellee appealed from the other adverse rulings of that board, the non-admitted assets and the dividends to participating policy holders were not involved.

The appeal taken from the board of review by appellee to the district court had to do with two propositions, as before explained. They were that the item of $230,158.61, reserved for state, federal, and other taxes, and the item of $1,679,025.42 unassigned surplus, were not taxable for the reason that they were proper debts and liabilities under the above named statutory provisions. No appeal was taken from the board of review to the district court by appellants, and therefore the only controversy in that court related to the propositions embraced in appellee's appeal. Due to the fact, then, that appellee's appeal did not involve the non-admitted assets or dividends paid to policy holders, that controversy could not possibly be before the district court. Because the appellants did not appeal, the propositions could only become material in the district court through appellee's appeal; for appellee's objection before the board of review did not relate to the non-admitted assets or the dividends

paid to policy holders, and hence appellee's appeal did, and could, not embrace those propositions. Contrary to this declaration, however, appellants argue that although appellee's objections before the board of review did not embrace the non-admitted assets or dividends to policy holders, yet the district court could include those items in deciding the assessment against the latter, even though appellee and not appellants took the appeal from the local board to that court. A basis for appellants' contention in that regard is alleged to have been found in section 7136 of the 1927 Code, which reads:

"Upon trial of any appeal from the action of the board of review fixing the amount of assessment upon any property concerning which complaint is made, the court may increase, decrease, or affirm the amount of the assessment appealed from."

That legislation, appellants say, duly empowered the district court to increase, as well as affirm or diminish the assessment made against appellee by the local board, regardless of whether appellee or appellants took the appeal. By studying the history of this legislation, as interpreted by this court, it is apparent that appellants are mistaken. Section 1373 of the 1897 Code declared:

"Any person aggrieved by the action of the assessor in assessing his property may make oral or written complaint thereof to the board of review, which shall consist simply of a statement of the errors complained of, with such facts as may lead to their correction, and any person whose assessment has been raised or whose property has been added to the assessment rolls, as provided in the preceding section (1372 of the same Code), shall make such complaint before the meeting of the board for final action with reference thereto, as provided in said section, and appeals may be taken from the action of the board with reference to such complaints to the district court of the county in which such board holds its sessions, within twenty days after its adjournment. Appeals shall be taken by a written notice to that effect to the chairman or presiding officer of the reviewing board, and served as an original notice. The court shall hear the appeal in equity and determine anew all questions arising before the board which relate to the liability of the property to

assessment or the amount thereof, and its decision shall be certified by the clerk of the court to the county auditor, who shall correct the assessment books in his office accordingly."

Those provisions contained in the Code of 1897 are now substantially set forth in sections 7132 to 7134, both inclusive. While section 1373 of the 1897 Code was in effect, this court, in a case known as the Farmers Loan & Trust Company v. Town of Fonda, 114 Iowa 728, said:

"The evidence clearly shows * * * that the assessment of the Fonda branch (of the bank) by the board of review on the basis of $40,000 valuation was not excessive, but the trial court found that the true valuation should have been $51,351.07, and fixed the taxable valuation on that basis, thereby increasing the taxable valuation, without regard to the penalty, by $2,824.76. This we think the trial court had no right to do. The matter was brought into court by complaint of appellant against the assessment of the board of review. When the trial court ascertained that this complaint was unfounded, it had nothing to do but to affirm the assessment. No provision is made for an appeal by the taxing authorities, and no such appeal was attempted. It must be borne in mind that the court, in determining this appeal, is still a court, and not an assessor or taxing board. Frost v. Board, 114 Iowa, 103. It was well settled under the statutory provisions in force prior to the present Code, that on such an appeal the court would not increase the assessment of the complaining taxpayer. * * * There is nothing in the language of Code section 1373 to indicate the intention on the part of the legislature to authorize the court to perform any other function than that of determining the correctness of the assessment, with reference to the complaints thereof made by the appealing taxpayer."

When Section 1373 was in force and the foregoing decision in the Farmers Loan & Trust Company case had been made, the Thirty-second General Assembly of the legislature in 1907 (Chapter 60), as shown by the session laws of that General Assembly, amended the foregoing section 1373 in this manner:

"Any officer of a county, city, town, township or school district interested or a taxpayer thereof may in like manner make

complaint before said board of review in respect to the assessment of any property in the township, city, or town, and an appeal from the action of the board of review in fixing the amount of assessment on any property concerning which such complaint is made, may be taken by any of such aforementioned officers. Such appeal is in addition to the appeal allowed to the person whose property is assessed and shall be taken in the name of the county, city, town, township, or school district interested and tried in the same manner, except that the notice of appeal shall also be served upon the owner of the property concerning which the complaint is made and affected thereby or person required to return said property for assessment. Upon trial of any appeal from the action of the board of review fixing the amount of assessment upon any property concerning which complaint is made, the court may increase, decrease, or affirm the amount of the assessment appealed from.''

This amendment, so far as material, is now set forth in sections 7135 and 7136 of the 1927 Code. Because of the phraseology contained in the amendment, it is said by appellants that the district court, on the appeal by appellee from the local board, had power to increase as well as lower or affirm the assessment made by the board. The foundation for this contention is that portion of the amendment set forth in section 7136 of the 1927 Code, previously quoted. Obviously, however, appellants do not properly construe the statute, for the amendment embodied in sections 7135 and 7136 of the present code in no way changed the meaning and intent of section 1373 of the 1897 Code (as now embodied in sections 7135 and 7136, both inclusive, of the 1927 Code) so far as the power of the district court is concerned to increase an assessment upon the taxpayer's appeal.

· While it is true that under the unamended statute the district court could only affirm or set aside the assessment, now, because of the amendment, the powers of that tribunal have been so increased that it may in proper instances increase, or decrease the assessment made by the board. Nevertheless, it was not contemplated by the legislature that the party not appealing should be benefited by the appeal. Except where it is otherwise expressly provided, the appellee in any appeal can only defend that given him by the ruling appealed from. If the appellee desires

more than obtained in the ruling appealed from, he also must appeal. The words "upon trial of any appeal" employed in the statute above quoted, indicate that the assessment may be increased, decreased, or affirmed according to the relief to which the appellant (whether a taxpayer or a public body) is entitled. Unless there is clear indication to the contrary, we cannot assume that the legislature intended to penalize the taxpayer by raising the assessment because he takes an appeal. Consequently the legislature intended that the assessment might be increased on the public's appeal and decreased on the taxpayer's appeal. Hence, on appellee's appeal from the board of review to the district court, that tribunal has no power or authority to increase the assessment. That increase can be made only on an appeal taken by "any officer of a county, city, town, township, or school district interested," etc.

Therefore, the items now under consideration,—that is, $457,-773.38, unadmitted assets, and $704,326.52, dividends to participating policy holders,—are not before us in the case at bar and consequently we pass no opinion on the question as to whether those funds should have been added to appellee's moneys and credits and taxed accordingly.

II. It is now necessary to determine the assessability or non-assessability of the items in appellee's aforesaid report which were in fact before the district court.

There are two of those items. They are, as before explained, $230,158.61 deducted by appellee from its moneys and credits for federal, state, and other taxes, and $1,679,025.42 unassigned or surplus funds, also deducted by appellee from the moneys and credits. By adding the amounts named in the two items together the aggregate result is $1,909,184.03. As before explained, the board of review deducted therefrom $788,556, which represented the value of real estate and tax exempt bonds contained in the foregoing moneys and credits; thus leaving a remainder of $1,120,627. Before, it has been explained that this is the sum ordered assessed by the local board of review and from that order of the local board appellee appealed to the district court. Accordingly, the correctness of such assessment made by the local board is now the question before us for consideration.

The complaint is made by appellants that the $230,158.61 should not have been deducted from appellee's moneys and

credits because taxes are not debts or liabilities, as contemplated by section 7029 and sections 6988 to 6992 of the 1927 Code. In Bailies v. City of Des Moines, 127 Iowa 124, we held that "debt," as used in section 1311 of the 1897 Code (now 6988 of the 1927 Code) does not include delinquent taxes. On the other hand, appellee argues that section 7029 of the 1927 Code adds the word "liabilities" and refers now to "debts and liabilities." Because of this, appellee concludes that the holding in the Bailies Case is overcome, and taxes being liabilities the mutual insurance company has a right to deduct the same from its moneys and credits. We find it unnecessary to determine that dispute for the reason that this controversy may be disposed of by considering the $230,158.61 as surplus or unassigned assets. To put the thought differently, the item of $230,158.61 is added to the item of unassigned assets or surplus funds which, as before said, is $1,679,025.42. By adding those two amounts together, the total sum is $1,909,184.03, as previously explained. When there is subtracted from that total sum $788,556 representing real estate and tax exempt bonds, the remainder is $1,120,627. Such subtraction was made by the local board of review and was not involved in the appeal from that board to the district court. Consequently it is not a controversy before this court on an appeal from the court below.

Then the question for determination is—did the local board of review properly assess that portion of appellee's moneys and credits amounting to $1,120,627? No other question is before us for determination. Appellee, as before explained, is a mutual insurance company, operating as such under the statute. Its assets are owned by the participating policy holders. They, in fact, are the owners and operators of the mutual insurance corporation. The unassigned surplus fund now under consideration came into the possession of the appellee company through stockholders' premiums paid on the level premium plan. Contained in the participating policies issued by appellee is the following provision:

"This policy, while in force, beginning with the payment of the second premium, shall participate each year in the surplus distribution of the company as determined and apportioned by the Board of Directors."

Under the legal reserve plan adopted by appellee, the premiums computed on the level premium method may be used only for the general purposes of the policy holders. According to the record, the gross annual premiums are allocated in the following manner: First, there is deducted therefrom the net annual premium. That net premium is the sum which, if paid annually on the anniversary date of the policy during the policy holders' expectancy, as shown by the experience tables of mortality used, when left with the appellee to accumulate at the rate of interest assumed, would amount to exactly enough to carry out the contract, providing all the policy conditions were met; and, second, after deducting the net premium above described, there is still left a portion of the gross premium. A part, or all, of this remaining portion is appropriated for a "loading" charge. Said loading charge is determined by experience over years of practice. When, as here, the company operates on the participating plan, the loading charge generally demanded is a sum sufficient for paying the estimated expenses for carrying the policy in force during the policy-holder's expectancy. If the loading charge, when added to the aforesaid net premium, consumes the entire premium, then the gross premium is fully accounted for. Appellee, under the law, must accumulate a certain statutory reserve, which, when added to the interest accumulating thereon at the rate required by law, will be sufficient in amount to reinsure its risks at any given time. Such reinsurance sum approximates the aforesaid net premium, but does not include the loading charge. In the third place, if there are any funds not needed for insurance, loading or operating expenses, they must be returned to the participating policy holders as a dividend. In Wall v. Bankers Life Company, 208 Iowa 1053, we considered a participating policy. During the discussion there, we said:

"Provisions contained in appellee's legal reserve and level premium policy, relating to dividends, are as follows: 'After the first policy year, upon payment in cash of the premium for the second policy year, and at the end of the second and each subsequent policy year, this policy, while in force * * * shall be credited with its portion of the divisible surplus as annually determined by the company * * *. 'Divisible surplus,' under this policy, must be determined in Iowa by appellee through the ex-

ercise of legal discretion, as distinguished from the absolute right in that regard permitted by the New York legislation referred to (elsewhere in the opinion). An analysis of the fundamental purpose of premiums will determine the principal elements fixing the limits of such discretion. That is to say, the underlying reason for these premiums is to: First, pay death losses under the level premium or legal reserve insurance; second, establish and maintain the necessary reserves therefor; third, meet operating expenses, including managerial, rents, taxes, advertising, agency, and miscellaneous items; and fourth, fortify against emergencies, such as epidemics and financial crises."

Having thus determined the general uses and purposes of the premiums under the legal reserve and level premium plan, we must now decide whether the surplus moneys and credits under consideration are taxable as held by the local board of review.

It is seriously contended by appellants that said surplus is taxable, and the foundation for their argument is the Iowa statutes. So far as material, those statutes, as set forth in the 1927 Code, are as follows:

"6988. In making up the amount of money or credits which any person is required to list, or to have listed or assessed, including actual value of any building and loan shares, he will be entitled to deduct from the actual value thereof the gross amount of all debts in good faith owing by him."

"6989. No acknowledgment of indebtedness not founded on actual consideration, and no such acknowledgment made for the purpose of being so deducted, shall be considered a debt within the intent of the preceding section."

"7029. In assessing for taxation the moneys and credits of every insurance corporation, company, or association organized under the laws of this state, except county mutuals and fraternal beneficiary associations, which county mutuals and fraternal beneficiary associations are not organized for pecuniary profit, the assessor shall ascertain the *debts or liabilities* (the italics are ours), if any, of such corporation, company, or association to its shareholders or other persons, which debts and liabilities shall be deducted, as provided in sections 6988 to 6992, inclusive."

"7030. In ascertaining the indebtedness or liability of such corporation, company or association, a debt shall be deemed to exist on account of its liability on the policies, certificates or other contracts of insurance issued by it equal to the amount of the surplus or other funds accumulated by any such corporation or association *for the purpose of fulfilling its policies, certificates or other contracts of insurance, and which can be used for no other purpose.*" (The italics are ours).

Because of the aforesaid statutory provisions, it is alleged that the surplus in appellee's possession held for loading purposes is not a debt or liability contemplated by section 7029 of the Iowa Code. This conclusion, appellants assert, is fully supported by Insurance Company v. Board of Review, 131 Iowa 254. That case was decided under the 1897 Code. Later, as indicated by the discussion in Appeal of Mill Owners Mutual Fire Insurance Company, 188 Iowa 664, the aforesaid statute was amended through Chapter 258, Acts of the Thirty-seventh General Assembly. Due to the amendment, we refused to follow the decision in Insurance Company v. Board of Review (131 Iowa 254), supra. There is involved in the Mill Owners case (188 Iowa 664), supra, as shown on page 665:

"[A] premium fund [representing] a sort of working balance and quick assets for the payment of losses. It also represents a reserve, for the payment of extraordinary losses. For such losses, it is subject to call to its last dollar."

If a balance remained after thus carrying out the policies, the same was returned to the policyholders by a method described as "declaring dividends." After refusing to follow the former decision in Insurance Company v. Board of Review (131 Iowa 254), supra, we declared in the Mill Owners case, on page 668:

"It does appear that the fund (accumulated through assessments in the Mutual Company) can be drawn on for current expense, but this also is pursuant to the contract of insurance (under legislation now set forth in section 7030 of the 1927 Code). The contracts of insurance contemplate the current expense as a part of the cost of insurance. * * * If we should deem the association to be liquidated today, the sole liability

chargeable upon this fund would be that to the policyholder. True, while the association continues as a going concern, the component parts of the fund are continually changing. New premiums and assessments are collected; current expenses are paid from these as they accrue; and the residue finds its ultimate place in this fund. It is the clear policy of the statute (what now is section 7030 of the 1927 Code) to exempt from local assessment the funds of an insurance association which are held for the benefit of policyholders in fulfillment of their contracts of insurance, and which are not an accumulation of earnings or profits accruing for the benefit of mere owners or stockholders of the company. The fact that this association has no capital stock, and, therefore, has no stockholders or owners, and no beneficiaries except its policyholders, furnishes a persuasive reason why it should be deemed to come fairly within the terms of the exemption provided in this statute.''

Resultantly, it is apparent that in the Mill Owners' case we refused to follow the rather restricted rule announced in Insurance Company v. Board of Review (131 Iowa 254), supra. Appellee, in the case at bar is, as was the Insurance Company in the Mill Owners' case, a mutual concern. The participating policyholders in the appellee company are the owners and controllers thereof. Under appellee's plan of organization, there are no stockholders and no dividends as such are paid to stockholders. In the event the gross premiums are more than sufficient to supply the net premiums and loading charges, then the remainder is returned to the participating stockholders under the policy. This is in strict accord with the insurance contract. See Wall v. Bankers Life Company (208 Iowa 1053), supra. Such return of premiums to the participating policyholders is not a dividend in the sense that it is an earning of the appellee company; but rather such returned so-called dividend is merely a saving on the cost of fulfilling the policyholders' contract. Because appellee is a mutual company, such savings thus accumulated belong to no one but the participating policyholders for the reason that they themselves supplied the funds and are the owners thereof, to whom, under the insurance contract, the same must be returned. Consequently, if the surplus now under consideration is a ''fund accumulated by'' the appellee com-

pany "for the purpose of fulfilling its policies, certificates or other contracts of insurance, and which can be used for no other purpose," then, the same is exempt from taxation. See Section 7030 of the 1927 Code; Appeal of Mill Owners Mutual Fire Insurance Company (188 Iowa 664), supra.

This fund, known as a loading charge, is essential, according to appellee's actuary and the deputy insurance commissioner, "for the purpose of fulfilling its policies, certificates or other contracts of insurance, and * * * can be used for no other purpose." To assure the solvency of the company and the payment of policy liabilities, this fund is necessary. According to the record, the policy of "loading" in the manner and way explained is considered "the best practice" by all the larger insurance companies. Even though the law does not require it, practice and business experience demand it. A policy, for instance, has a cash surrender value. When the demand is made, therefore, by the policyholder, the amount due must be forthcoming. These cash surrender values would approximately equal the statutory reserves. So, in order to have a fund above the reserves for working purposes, the loading is necessary. Working funds must be available, for from that source the appellee will pay its death, disability, and other claims under the policy promptly and without waiting until such amounts otherwise could be collected through premiums.

Furthermore, as before indicated, appellee operates on a level premium plan. Necessarily, then, it must have a sufficient reserve to guarantee that its contracts be fulfilled in the event of unusual mortality, or financial crises. In the event of increased mortality or financial crises, the gross premiums and statutory reserves might not be sufficient for the insurance purposes, and therefore the loading funds would save the company from destruction. An assessment on policyholders would not be possible because the insurance is written on the level premium plan. A call on stockholders could not be made because there are none. The only safeguard, then, is the loading fund. Other states through their legislatures have recognized the advantages of such a loading fund. New York, for instance, permits a loading fund in the maximum amount of ten per cent. Here appellee's loading or surplus fund does not exceed ten per cent. It cannot be said, under all the facts and circumstances, there-

fore, that the surplus is excessive. Perhaps there is a point beyond which such loading or surplus could be so extremely large as not to be "for the purpose of fulfilling" policies, certificates, or other contracts of insurance, as provided by section 7030, supra. As to whether or not that is true, we do not now decide; for it is enough to say that the loading or surplus fund in the case at bar has not reached the assumed excessive point.

Under the principle announced in the Mill Owners Case (188 Iowa 664), supra, the object of the loading or surplus fund now under consideration is to fulfill the policyholders' contract, and could not be used for any "other purpose," because in this mutual company premiums belong to the policyholders themselves and are paid for fulfilling the insurance contract and nothing else. If there is any balance after keeping up reserves, maintaining the loading fund, paying insurance losses and operating expenses, the same, under the contract, should be returned as a dividend. The law relating to mutual insurance companies does not presuppose a diversion of those funds not contemplated by the contract. Fundamentally those insurance contracts cannot be carried out on behalf of the policyholders, unless taxes were paid and essential operating expenses met. Moreover, a sufficient surplus fund is desirable to avoid a catastrophe that might otherwise arise during a financial panic or greatly increased mortality. Too, a practical working fund must exist. Praise should be given, rather than condemnation hurled upon, appellee for maintaining practical reserves. Without keeping such reserve, appellee could not carry out its insurance obligations to its policyholders.

Wherefore, it is plain that the local board of review had no right to assess this surplus fund as moneys and credits, and the judgment of the district court should be, and hereby is, affirmed.—Affirmed.

FAVILLE, C. J., and STEVENS, DE GRAFF, ALBERT, MORLING, WAGNER, and GRIMM, JJ., concur.

EVANS, J., not participating.