**EXCEL CORPORATION, Appellant,**

v.

**POTTAWATTAMIE COUNTY BOARD OF REVIEW, Appellee.**

**No. 91–1216.**

Court of Appeals of Iowa.

Aug. 27, 1992.

F. Richard Lyford and Barbara G. Barrett of Dickinson, Throckmorton, Parker, Mannheimer & Raife, P.C., Des Moines, for appellant.

Frank W. Pechacek, Jr. and Suellen Overton of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellee.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

## FACTS

This is an appeal of two property tax assessment cases consolidated in 1990. The property involved is a beef slaughter and fabrication plant in Oakland, Iowa, which is owned by the Excel Corporation. The property consists of 243,874 square feet of buildings on 133 acres of land and includes beef processing and fabricating equipment. In 1989 and in 1990, the Pottawattamie County Assessor assessed the property in question at $7,577,750. After the board of review denied its protests, Excel appealed to the district court requesting the 1989 assessment be reduced to $2,580,750,[1] and the 1990 assessment be reduced to $2,000,000.[2]

In 1983, Excel purchased the Oakland plant as part of a three-plant acquisition from Land O' Lakes. Excel paid $60,000,000 for the three plants. Excel paid $43,000,000 cash, and the balance of the purchase price was paid by assuming liabilities including Industrial Revenue Bond payments and equipment lease payments. At the time of the purchase, only the Oakland plant was operating, the other two plants were closed.

In December 1983, Excel allocated $30,000,000 to the subject property for its income tax and accounting purposes. The $30,000,000 figure was comprised of the following amounts: $200,000 for land; $10,600,000 for building and improvements; $9,960,000 for equipment (owned); and $9,240,000 for equipment (leased). The total original acquisition cost of the equipment owned and leased was $19,200,000.

Although Excel paid for the plant in 1983, because of antitrust litigation the plant ceased to operate in mid–1984. In March of 1987, Excel was finally allowed to take title to the property as a result of the United States Supreme Court decision in *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986). Excel then reallocated the value it placed on the three plants for its internal records by allocating $12,000,000 for the Oakland plant. Excel divided the $12,000,000 figure into the following amounts: $100,000 for land; $5,300,000 for building and improvements; and $6,700,000 for machinery and equipment. Excel did not re-open the plant. Rather, it used some of its equipment, valued at approximately $2,000,000, in Excel's other plants.

In March 1988, Excel settled the residual value on the lease equipment for $1,000,040, instead of the estimated $2,000,000.

---

1. Plaintiff protested the January 1, 1989, assessment on the ground the property was assessed for more than the value authorized by law.

2. Plaintiff protested the January 1, 1990, assessment on the same ground as footnote 1 above and added a ground that there was an error in the assessment in that the machinery and equipment was not in use and had not been in use for many years.

Then, Excel reallocated the value of the Oakland property at $5,740,000 for equipment and $5,300,000 for land and buildings, for a total value of $11,040,000.

In its financial statements, Excel valued its Oakland property at $11,667,300. It pays $400,000 per year to insure the property at $15,600,000, on a basis of 40% of its $50,000,000 replacement value. Excel's president testified the asking sales price for the property ranged between $15,000,-000 to $30,000,000, depending upon whether a prospective buyer would be perceived to be a competitor to Excel's other nearby plants. Including the insurance premium and property taxes of $180,000, Excel spends approximately $760,000 per year to maintain the facility.

At trial, Excel presented two experts, William S. Carlson and Lawrence Nicholson, who testified the value of the land and buildings, not including the plant's machinery and equipment, was $1,950,000 and $1,500,000, respectively.[3] Neither of Excel's appraisers testified to the value of the machinery and equipment. The experts took the position that the machinery was either obsolete or merely being stored in the building for use at other plants, therefore, it should not be taxed as real property. Both Nicholson and Carlson admitted there is a strong income tax incentive for a buyer to allocate as much of the purchase price as possible to machinery and equipment.

Nicholson had only appraised one other beef packing plant, and he had not appraised any pork packing plants. After giving conflicting testimony, Nicholson reluctantly admitted his firm had not done a significant amount of appraisal work in Iowa. Nicholson excluded the machinery and equipment as allocated by the purchaser from the price of his comparable sales.

Carlson used only the sales prices approach. Carlson had never appraised a beef plant except for Excel's closed beef plant in Spencer, Iowa, which was appraised only for the purpose of gifting it to the City of Spencer. Carlson also removed the value of machinery and equipment as allocated by the buyer from the sales price of each of his comparable sales. Carlson had never seen several of his comparable sales. Carlson's adjustment for comparable sales exceeded 20%: sale 5 involved a 57% adjustment; sale 6 involved a 69% adjustment; sale 7 involved a 45% adjustment; and sale 8 involved a 50% adjustment.

The county assessor, Robert E. Hastings, and the board of review experts, Robert L. Kocer and Robert J. Wilson,[4] testified the property's fair market value, including the land, building, machinery, and equipment, was between $7,520,000 and $7,825,000. Their calculations placed a value on the idle machinery and equipment at 10% of the original acquisition costs.

The 10% figure is only a suggestion in the *Iowa Department of Revenue Guide to Valuation.* The county assessor and the board's expert witnesses were conservative in using the 10% figure. Iowa Code section 427B.10 limits the valuation of machinery and equipment for assessment purposes to 30% of the net acquisition cost of the property. *See* Iowa Code § 427B.10 (1991).

Wilson used the sales comparison and cost approaches. He ultimately relied upon his sales comparison approach in which he compared the plants that were comparable sales as a whole, without extracting the machinery and equipment from the sale. Wilson personally inspected and photographed each of his comparable sales. Wilson's appraisal report contained an equip-

---

**3.** Excel did not originally complain of the valuation of the machinery and equipment, but did claim in 1990 that it had not used the manufacturing process at all and alleged therefore that the equipment could not be taxed as real property.

**4.** We reject appellant's argument that the testimony of Kocer and Wilson is inadmissible for evidentiary reasons. Although parts of their

testimony may cast doubt as to the adjustments they made when taking into consideration distortions in the sales price of their comparables, we believe that where necessary the board's witnesses did sufficiently quantify the factors which affect the applicability of comparable sales. *See Dowden v. Dickinson County, Iowa, Bd. of Review,* 338 N.W.2d 719 (Iowa App.1983).

ment valuation by Clyde White, who holds patents for meat processing equipment, has constructed and operated meat processing plants, and has appraised the machinery and equipment in over 20 beef processing plants.

The district court found White to be the most credible and informed witness regarding the value of beef packing machinery and equipment. The district court further concluded Hastings was the most knowledgeable witness regarding the actual conditions of the packing plants in Pottawatta-mie County because he had actual knowledge of the conditions based upon personal inspections of the plants. The other witnesses could only estimate the condition of each comparable sale at the time of each sale. The district court ultimately found the assessor's experts to be more credible and dismissed Excel's tax protest. Excel appeals. We affirm.

## ASSESSMENTS FROM 1982 THROUGH 1990

The assessor made the following valuations for the property in question:

|  | 1982 | 1983 | 1984 | 1985 |
|---|---|---|---|---|
| Land | $ 81,750 | $ 81,750 | $ 81,750 | $ 81,750 |
| Bldg. | 2,441,403 | 3,258,713 | 3,857,432 | 3,857,432 |
| M & E | 3,764,969 | 5,241,162 | 6,308,574 | 1,449,069 |
| TOTAL | $6,288,122 | $8,581,625 | $10,247,756 | $5,388,251 |

|  | 1986 | 1987 | 1988 | 1989 |
|---|---|---|---|---|
| Land | $ 81,750 | $ 81,750 | $ 81,750 | $ 81,750 |
| Bldg. | 3,857,432 | 7,000,000 | 7,000,000 | 7,000,000 |
| M & E | 1,449,069 | 1,452,070 | 496,000 | 496,000 |
| TOTAL | $5,388,251 | $8,533,820 | $ 7,577,750 | $7,577,750 |

|  | 1990 |
|---|---|
| Land | $ 81,750 |
| Bldg. | 7,000,000 |
| M & E | 496,000 |
| TOTAL | $7,577,750 |

## SCOPE OF REVIEW

■ Iowa Code section 441.39 provides in part:

The court shall hear the appeal in equity and determine anew all questions arising before the board which relate to the liability of the property to assessment or the amount thereof. The court shall consider all of the evidence and there shall be no presumption as to the correctness of the valuation of assessment appealed from....

Iowa Code § 441.39 (1991). We, therefore, review tax assessment cases de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7). An appealing party's attack on an assessment confirmed by the board of review is a two-stage process. *Heritage Cablevision v. Bd. of Review,* 457 N.W.2d 594, 598 (Iowa 1990). In the first stage, the party challenging the assessment is required to show that the board of review's valuation is excessive, inadequate, inequitable, or capricious. *Id.* (citing, *Richards v. Hardin County Bd. of Review,* 393 N.W.2d 148, 151 (Iowa 1986); *Wunschel v. Bd. of Review,* 217 N.W.2d 576, 578 (Iowa 1974)). In the second stage, that party must establish what the correct valuation should be. *Id.*

Although the burden of proof is initially on the taxpayer, when the taxpayer offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or person seeking to uphold such valuation to be assessed. Iowa Code § 441.21(3) (1991); *Ross v. Bd. of Review,* 417 N.W.2d 462, 464 (Iowa 1988). Under certain cir-

cumstances, the court may increase, decrease, or affirm the amount of the assessment appealed from. Iowa Code § 441.43 (1991).

## ANALYSIS

Iowa Code section 441.21(1) states in pertinent part:

1.a. **All property subject to taxation shall be valued at its actual value** which shall be entered opposite each item, and except as otherwise provided in this section, shall be assessed at one hundred percent of its actual value, and the value so assessed shall be taken and considered as the assessed value and taxable value of the property upon which the levy shall be made.

b. **The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property except as otherwise provided in this section. "Market value" is defined as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property. Sale prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value.** In arriving at market value, sale prices of property in abnormal transactions not reflecting market value shall not be taken into account, or shall be adjusted to eliminate the effect of factors which distort market value, including but not limited to sales to immediate family of the seller, foreclosure or other forced sales, contract sales, discounted purchase transactions or purchase of adjoining land or other land to be operated as a unit.

Iowa Code § 441.21(1) (1991) (emphasis added).

■ The district court found Excel offered evidence by two disinterested witnesses who were qualified as experts and could render an opinion as to the fair market value of the property. We agree with the district court's finding Carlson and Nicholson were disinterested witnesses. For purposes of this opinion, we assume their testimony provided competent evidence the market value of the property is less than the market value determined by the board of review.[5] Therefore, we find Excel met its burden of proof and the burden then shifted to the board of review to uphold the assessment.

Although the burden of proof shifted to the board of review, we find it met its burden. The trial in this case evolved into a "battle of the experts." The district court determined the opinions of Hastings, Kocer, and Wilson were more credible and complete than the opinions of Excel's witnesses. It also found the board's witnesses to be more experienced in appraising beef processing and fabricating plants.

As previously stated, the trial court is in a much better position to weigh the credibility of the witnesses than we are, and we will give weight to the trial court's decision on credibility even in a de novo review. Iowa R.App.P. 14(f)(7). Furthermore, as the district court noted, Excel consistently indicated a higher value of the property in its sales negotiations, insurance coverage, financial statements, and answers to interrogatories than its present assessed value.

There is no dispute as to the valuation attributed to the land. The appellant concedes that amount. The main dispute relates to the valuation fixed for the improvements to the land and whether the machinery and equipment should be taxed at all. The district court found the valuation set by the county assessor was within the range of evidence presented and that the

---

**5.** Having made this "assumption" we need not rule on appellee's argument that since Excel's witnesses failed to give testimony as to the value of the machinery and equipment, the burden in fact and in law did not shift to the board for their witnesses failed to offer evidence of the value of all of the property as required by the applicable statutes.

machinery and equipment should be taxed. We do not dispute this finding and concur that the trial court properly applied the law in affirming the assessor when fixing valuations to the machinery and equipment.

A brief discussion as to the trial court's ruling concerning the valuation to be attributed to the machinery and equipment is necessary. We note the first time Excel reported an acquisition cost for machinery and equipment to the assessor was January 1, 1988. In doing so, it reported its value as $4,960,000. It indicated at that time the equipment was idle and should be reduced to 10% of that amount, or $496,000.

The assessor accepted that value for January 1, 1989, and January 1, 1990. The assessor, during the course of the trial, challenged that assessment as incorrect and claimed the $30,000,000 allocation made in 1983 prior to the conclusion of the antitrust action gave rise to a $19,200,000 figure for equipment owned and leased less equipment removed from the plant by Excel.

 The appellant is concerned with a finding by the trial court that the original acquisition cost of the equipment equaled $17,200,000. This does appear in the findings, but we do not read the trial court's ruling as a modification of the valuation of the machinery and equipment as fixed by the assessor on January 1, 1989, and January 1, 1990. There is no further mention of that amount in either the adjudicatory or decretal part of the court's ruling. Accordingly, we conclude the court did not order an increase in the machinery and equipment valuation over and above that fixed by the assessor for the years 1989 and 1990.[6]

We believe the court was correct in not increasing that value. Section 441.43 of the Iowa Code provides:

Upon trial of any appeal from the action of the board of review fixing the amount of assessment upon any property concerning which complaint is made, the court may increase, decrease, or affirm the amount of the assessment appealed from.

Iowa Code § 441.43 (1991).

Under that section, the trial court may in proper instances increase or decrease the assessment made by the board. *Cent. Life Assurance Soc'y v. City of Des Moines,* 212 Iowa 1254, 1261, 238 N.W. 535, 538 (1931). However, the party not appealing does not benefit by the appeal. *Id.* The appellee can only defend that given him by the ruling appealed from. *Id.*

If the appellee desires more than that obtained in the ruling appealed from, the appellee must also appeal. *Id.* at 1261–62, 238 N.W. at 538. In this respect, we have not been directed to any portion in the record where the board of review appealed. Regardless, in affirming we affirm on the basis of the valuation as originally fixed by the assessor on January 1, 1989, and January 1, 1990.

After considering all issues presented, we affirm the decision of the district court.

Costs of this appeal are taxed to the appellant.

AFFIRMED.

---

**6.** We reach this conclusion because of appellant's argument that the court overvalued the machinery and equipment and suggested in its motion for new trial and to enlarge findings, at paragraph 65 thereof, as an "alternate" finding that "the court concludes the machinery, if it could be taxed as real estate, has a fair market value as of the valuation dates of $496,000."